UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ANTHONY BARBER,<br><br>Plaintiff,<br><br>v.<br><br>CPL. COX, SGT. NICODEMUS, D.W. McKAY, LT. D. MARTINEZ, and WARDEN RANDY BLADES,<br><br>Defendants. | Case No. 1:17-cv-00318-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

# INTRODUCTION

Pending before the Court is an unopposed Motion for Summary Judgment by Defendants Jason Cox, Tyler Nicodemus, Deputy Warden Tim McKay, Lieutenant Dagoberto Martinez and Warden Randy Blades ("Defendants"). (Dkt. 16.) Having reviewed the record and briefs, the Court finds that the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding delay, and because the Court finds the decisional process would not be significantly aided by oral argument, the Court will decide the Motion on the record without oral argument. Loc. Civ. R.

7.1(d)(2)(ii). For the reasons set forth below, the Court finds good cause to GRANT Defendants' Motion.

## BACKGROUND

Anthony Barber is an inmate incarcerated by the Idaho Department of Corrections ("IDOC"). On August 2, 2017, Barber initiated this action by filing a Complaint alleging various violations of 42 U.S.C. § 1983. Dkt. 3. In his Complaint, Barber alleges his cellmate, Greg Nelson, forced oral sex on him repeatedly during the months of June and July of 2017. When he turned to IDOC staff for help, Barber alleges Defendants not only failed to protect him, but punished him with a Disciplinary Offense Report ("DOR") for engaging in sexual activity.

Barber and Nelson first became cellmates in June of 2017. Defendant Nicodemus was the housing sergeant who assigned Barber and Nelson to the same cell. Before making a particular housing assignment, Nicodemus reviewed an inmate's DOR history and file for any security alerts. Nicodemus assessed Barber and Nelson's files before housing them together. Barber's file contained DORs he had received for engaging in sexual activity in October of 2012 and February of 2013. Nelson did not have any DORs for sexual activity in his file. Nicodemus decided to place Barber and Nelson in the same cell because there was no history of sexual contact or conflict between them, and because Barber's DORs were several years old. There were also no new reports that either had engaged in prohibited sexual activity with other inmates, or any security concerns suggesting Barber and Nelson should not be housed together

Barber and Nelson lived together without incident between June 4 and July 14, 2017. On July 18, 2017, Barber told Defendant Tyler Cox that Nelson had forced oral sex upon him. Due to the seriousness of Barber's allegations, Cox immediately separated Barber and Nelson, and reported Barber's potential Prison Rape Elimination Act ("PREA") disclosure to his supervisor, Defendant Lieutenant Dagoberto Martinez.[1] Martinez promptly interviewed Barber in the presence of Cox and a facility clinician. When Martinez asked him to describe his concerns, Barber stated that he had performed oral sex on Nelson four days earlier (on July 14, 2017) in exchange for coffee. When Nelson asked Barber if he wanted to exchange coffee for sex again that night, Barber said he refused and Nelson threatened to beat him up in retaliation. Barber became scared and reported his concerns to correctional staff.

After Barber told Martinez his concerns, Martinez asked if the sexual contact that had occurred four days earlier between Barber and Nelson had been consensual. Barber replied, "Oh yes. This is how I hustle things." Dkt. 16-3, ¶ 4. Barber also said that if Nelson was moved to another tier "it would be a dead issue" and he would feel safe. *Id*. Martinez then interviewed Nelson, who denied any sexual contact with anyone for the

---

[1] The PREA, 42 U.S.C. §§ 15602-15609, was enacted to address the problem of rape in prison by creating and applying national standards to prevent, detect, and respond to prison rape, and by ensuring compliance of state and federal prisons by conditioning eligibility for federal grant money on compliance with the standards. Although Barber's Complaint suggested Defendants violated his rights by failing to follow the PREA guidelines and procedures, this Court dismissed such claims in its Initial Review Order because the PREA does not authorize a private right of action. Dkt. 10.

last 24 to 48 hours. Martinez concluded Barber and Nelson should be separated during the PREA investigation triggered by Barber's report, and Nelson was moved to a different tier. Nelson and Barber have not been housed together, or in the same tier, since Barber's report.

After interviewing both inmates, Martinez instructed Cox to prepare a DOR for Barber for his admitted consensual sexual contact with Nelson. Upon receiving the DOR on July 19, 2017, Barber submitted multiple "Offender Concern Forms" stating, *inter alia*, he had been raped by Nelson on July 14 and July 18, 2017 and had been served with a DOR in retaliation for reporting his rape. Dkt. 16-5, Ex. 1.

Barber's case was thereafter assigned to the investigations unit for a formal PREA investigation. Officer Matthew Lytle was the IDOC officer assigned to investigate Barber's report. As a part of his investigation, Officer Lytle interviewed Barber on August 3, 2017. The interview was recorded, and a transcript of the recording was filed with Defendants' Motion for Summary Judgment. Dkt. 16-5, Ex. 2. During the interview, Barber admitted his *only* sexual activity with Nelson had occurred the morning of July 14, 2018, that this encounter was consensual, that Nelson had been moved from Barber's cell and tier since Barber's report, and that Barber was "happy" and had not been threatened since Nelson's move. *Id*. Based on his interview and Barber's admission that his only sexual contact with Nelson had been consensual, Lytle concluded Barber's claim that he had been raped by Nelson was unsupported.

Defendants filed this Motion for Summary Judgment on October 11, 2018. On October 12, 2018, the Clerk of the Court sent Barber the Court's standard Notice to pro se litigants regarding the necessity of responding to Defendants' motion within 21 days. Dkt. 17. Barber has never responded to or opposed Defendants' Motion for Summary Judgment.

### III. LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56(a). This Court's role at summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Zetwick v. Cty. of Yolo*, 850 F.3d 436, 441 (9th Cir. 2017) (citation omitted). In considering a motion for summary judgment, this Court must "view[] the facts in the non-moving party's favor." *Id*. To defeat a motion for summary judgment, the respondent need only present evidence upon which "a reasonable juror drawing all inferences in favor of the respondent could return a verdict in [his or her] favor." *Id*. Accordingly, this Court must enter summary judgment if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The respondent cannot simply rely on an unsworn affidavit or the pleadings to defeat a motion for summary judgment; rather, the respondent must set forth the "specific facts," supported by evidence, with "reasonable

particularity" that preclude summary judgment. *Far Out Prods., Inc v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001).

## IV. ANALYSIS

In this case, Defendants' Motion for Summary Judgment should be granted on both procedural grounds and on the merits. With respect to the former, the Court's Notice to pro se litigants explained to Barber what a motion for summary judgment is, and how and when Barber was required to respond to Defendants' motion. The Notice also included the following warning:

> **You are warned** that if you do not file your response opposing the motion within 21 days (or such other time period set by the Court), the Court will consider the facts provided by the moving part as undisputed and **may grant the motion** based on the record before it, or it may **dismiss your entire case for failure to prosecute** (abandonment of your case). *See* Local Rule 7.1(e)(2); Fed. R. Civ. P. 41(b).

Dkt. 17, at p. 2 (emphasis in original).

To date, Barber has not filed anything in response to Defendants' Motion for Summary Judgment.

> Idaho District Local Rule 7.1 outlines:
>
> In motions brought under Federal Rule of Civil Procedure 56, if the non-moving party fails to timely file any response documents required to be filed, such failure shall not be deemed a consent to the granting of said motion by the Court. However, if a party *fails to properly support an assertion of fact or fails to properly address another party's assertion of fact* as required by Federal Rule of Civil Procedure 56(c) or Local Rule 7.1(b)(1) or (c)(2), the Court *may consider the uncontested material facts as undisputed for purposes of consideration of the motion, and the Court may grant summary judgment* if the motion and supporting materials - including the facts considered undisputed - show that the moving party is entitled to the granting of the motion.

Idaho Dist. Loc. R. 7.1(e)(2) (emphasis added).

Accordingly, pursuant to this Court's Notice to Barber, as well as Local Rule 7.1, Barber's failure to timely respond to Defendants' Motion for Summary Judgment is deemed acquiescence to the facts alleged in their motion. The Court thus considers undisputed Defendants' claim that Barber's only sexual contact with Nelson was consensual.

With respect to the merits, this Court allowed Barber to proceed on his First Amendment Retaliation claim and Eighth Amendment "prison conditions" claim in its Initial Review Order. Dkt. 10. Barber's retaliation claim alleges he was issued a DOR because he submitted concern forms reporting Nelson's rapes. The required elements of First Amendment retaliation claim are: "(1) An assertion that a state actor took some adverse action against an inmate; (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005).

Barber cannot satisfy the elements of a retaliation claim. The DOR was issued on July 19, after Barber admitted, on July 18, to engaging in consensual sex with Nelson on July 14, 2017. Barber responded to the July 19, 2017 DOR by filing three separate grievance forms claiming he had been raped by his cellmate and had received a DOR for sexual activity. "Of fundamental import to prisoners are their First Amendment 'rights to file prison grievances' without fear of retaliation." *Id*. (quoting *Bruce v. Yist*, 351 F.3d

1283, 1288 (9th Cir. 2003)). However, in this case, the DOR was not issued as a retaliation because Barber submitted grievance forms, but was instead delivered before Barber even filed the grievances, in response to Barber's admitted violation of IDOC's rules against consensual sex. Further, as Defendants note, "it cannot be seriously questioned that disciplining an inmate for engaging in consensual sexual activity while in prison is rationally related to the legitimate penological goal of discouraging and/or preventing sexual assaults within the institution." Dkt. 16-1, p. 13; *see also Luke v. Peterson*, 2012 WL 913749 at *5 (D. Idaho 2012); *Mintun v. Peterson*, 2010 WL 1338148 (D. Idaho 2010); *Veney v. Wyche*, 293 F.3d 726, 733 (4th Cir. 2002*); Fields v. Smith*, 712 F.Supp.2d 830, 869 (E.D. Wis. 2010). The DOR advanced the penological goal of preventing sexual activity between inmates, and thus did not infringe upon Barber's First Amendment rights.

Barber's Eighth Amendment claim is based on Defendants' failure to prevent the harm he purportedly suffered at the hands of Nelson. While prison officials have a duty to protect prisoners from violence, including sexual violence, at the hands of other prisoners, a prison official violates the Eighth Amendment for failure to protect only when such officials actually knew of a substantial risk to inmate health or safety, and failed to reasonably respond to such risk. *Farmer v. Brennan*, 511 U.S. 825, 844 (1994). Barber cannot establish either element.

First, Defendants had no knowledge Barber was at risk of sexual assault by Nelson. Defendants reviewed Nelson and Barber's files before housing them together.

While Barber had two DORs for sexual activity with other inmates, Nelson had never received a DOR for sexual activity. Nor was there any history of conflict or sexual activity between Barber and Nelson before they were housed together. In fact, Barber's Complaint states he requested Nelson as a cellmate because Nelson had been nice to him. Dkt. 3, p. 9. Barber and Nelson were also housed together between June 4 and July 14, 2017 without incident. It was not until Barber told them that he had been sexually active with Nelson that Defendants' had any knowledge Nelson posed a potential risk to Barber's safety. Where, as here, prison officials lack knowledge of a risk, they cannot be said to have inflicted punishment. *Farmer*, 511 U.S. at 844.

Second, "prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id*. Here, Defendants immediately separated Barber and Nelson as soon as Barber reported Nelson's alleged rape. Dkt. 16-4, ¶ 2. After interviewing Barber and Nelson, Martinez concluded Nelson should be moved to another tier pending an investigation of Barber's PREA claim. Dkt. 16-3, ¶ 6. The move occurred immediately thereafter to ensure the safety of both inmates. *Id*., ¶ 7. Following the PREA investigation, an alert was issued advising staff that Barber and Nelson should not be housed together in the future. Dkt. 16-7, ¶ 4.

Thus, Defendants immediately responded to the threat Nelson purportedly posed to Barber. Defendants separated the two as soon as the threat was reported, throughout all stages of the investigation, and permanently after the investigation concluded.

Defendants not only responded reasonably to the risk at issue here, but also averted any risk of future harm by moving Nelson to a separate tier where he and Barber could no longer interact. Because they reasonably responded to the risk Nelson allegedly imposed, Defendants "cannot be found liable under the Cruel and Unusual Punishments Clause." *Farmer*, 511 U.S. at 845. Accordingly, Barber's Eighth Amendment claim fails as a matter of law.

## ORDER

Now, therefore, it is hereby ordered that Defendants' Motion for Summary Judgment (Dkt. 16) is **GRANTED**.

DATED: February 5, 2019

_____
B. Lynn Winmill
U.S. District Court Judge